# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA FERNANDEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL[1], ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 1:16-cv-01591 - JLT <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF ROSA FERNANDEZ |

Rosa Fernandez asserts she is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and determining Plaintiff's residual functional capacity. Because the ALJ applied the proper legal standards and the decision is supported by substantial evidence, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

In January 2009, Plaintiff "filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2007." (Doc. 12-5 at 8) The Social Security Administration denied her application at the initial level and upon reconsideration. (*Id.*) Plaintiff requested a hearing, and testified before an ALJ on March 24, 2011. (*Id.*) The ALJ determined

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant in this action.

1

Plaintiff was not disabled and issued an order denying benefits on April 7, 2011, which became the final decision of the Commissioner of Social Security. (*Id.* at 8-12)

In February 2013, Plaintiff again filed applications for benefits, in which she alleged disability beginning February 22, 2007. (*See* Doc. 12-3 at 16) However, Plaintiff later "amended the alleged onset date to July 20, 2011 to follow the date of the previous Administrative Law Judge decision and [her] 45th birthday." (*Id.*) The Social Security Administration denied her applications at the initial level and upon reconsideration. (*See id.*) Plaintiff requested a hearing on these applications, and testified before an ALJ on March 11, 2015. (*Id.* at 16; Doc. 12-4) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on May 28, 2015. (*Id.* at 13-23) Plaintiff filed a request for review with the Appeals Council, which denied the request on August 19, 2016. (*Id.* at 2-4) Therefore, the ALJ's conclusion that Plaintiff was not disabled became the final decision of the Commissioner.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A. Relevant Medical Evidence[2]

On January 6, 2012, Dr. De la Rosa reviewed the medical record and noted Plaintiff had been diagnosed with degenerative disc disease of the lumbar and cervical spine. (Doc. 12-10 at 72-76) According to Dr. De la Rosa, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. (*Id.* at 73) In addition, Dr. De la Rosa determined Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally crouch and crawl; and frequently stoop, kneel, and

---

[2] The Court has reviewed the entirety of the medical record. This summary addresses the medical opinions and treatment notes that the parties identified as relevant to the issues raised by Plaintiff in her opening brief.

3

balance. (*Id.* at 74) Dr. De la Rosa opined Plaintiff was limited with her ability to reach, but was unlimited with gross manipulation, fine manipulation, and feeling. (*Id.*)

In August 2012, Plaintiff underwent an MRI of her cervical spine, which showed a "disc protrusion [that] resulted in mod[erate] to severe foraminal stenosis." (Doc. 12-12 at 3)

In February 2013, Dr. Arturo Palencia, who worked at the Pain Institute of Central California, noted Plaintiff's medical history included an "unspecified type of arthritis," rheumatoid arthritis, depression, and anemia. (Doc. 12-12 at 4) Plaintiff continued to receive treatment for her neck pain, which she described as "constant and varie[d] in intensity." (*Id.* at 3) Dr. Palencia noted Plaintiff's treatment history included "acupuncture, injections and [p]hysical therapy." (*Id.*) Plaintiff told Dr. Palencia that "her pain would resolve for 2 months following each injection." (*Id.*) Dr. Palencia determined Plaintiff had a "normal … [range of motion], muscle strength and tone, and stability" in her upper extremities. (*Id.* at 4) Dr. Palencia determined Plaintiff continued to exhibit normal range of motion, strength, tone, and stability in her arms at appointments through July 2013. (*See* Doc. 12-12 at 7, 10; Doc. 12-14 at 8)

On August 26, 2013, Dr. Frye reviewed the record and opined Plaintiff's severe physical impairment included degenerative disc disease. (Doc. 12-5 at 42-43) According to Dr. Frye, Plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking "[a]bout 6 hours in an 8-hour workday," and sitting with normal breaks for "[a]bout 6 hours in an 8-hour workday." (*Id.* at 43-44) Dr. Frye believed Plaintiff had limitations with both upper extremities, including with the ability to push and pull; reach overhead, in front, and laterally with each arm; and could not do any "work above shoulder level." (*Id.* at 44) Dr. Frye opined Plaintiff did not have any limitations with gross manipulation, fine manipulation, or feeling. (*Id.*) In addition, Dr. Frye determined Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds; balance; stoop; kneel; crouch; and crawl. (*Id.*)

On September 12, 2013, Plaintiff visited the Arvin Medical Clinic, where she complained of "generalized pain" and the treatment provider indicated a need to rule out rheumatoid arthritis and refer Plaintiff to a rheumatologist. (Doc. 12-14 at 40) The following week, she had an appointment with Dr. Palencia, who noted Plaintiff had completed physical therapy. (*Id.* at 10) Dr. Palencia found

Plaintiff had tenderness and limited range of motion in her spine. (*Id.* at 11) Dr. Palencia also determined Plaintiff's range of motion, "muscle strength and tone, and stability" were normal in her upper extremities. (*Id.*) Dr. Palencia opined that Plaintiff's "current problems" included degeneration of [a] cervical intervertebral disc, spondylosis without myelopathy, cervicalgia, myalgia, myositis, and arthropathy. (*Id.* at 12)

In November 2013, Plaintiff had a neurological consultation due to her complaints of "[n]eck pain, bilateral upper extremity numbness and tingling, bilateral lower extremity numbness, [and] low back pain." (Doc. 12-14 at 76) Dr. Imad Abumeri determined Plaintiff's reflexes were "+2 in the upper extremity except for the left bicipital and tricipital and right bicipital and tricipital, which [was] diminished +1." (*Id.* at 77) In addition, she had "patchy decreased sensation to pinprick and light touch." (*Id.*) According to Dr. Abumeri, Plaintiff's motor strength was "5/5" in both her upper and lower extremities. (*Id.*) During the consultation, Plaintiff elected to proceed with a cervical fusion, which was performed on April 8, 2014. (*Id.* at 78; Doc. 12-15 at 35)

Dr. L. Bobba reviewed the record and completed a physical residual functional capacity assessment on January 6, 2014. (Doc. 12-5 at 72-76) Dr. Bobba concluded Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk for a total of six hours in an eight-hour day, and sit for a total of about six hours in an eight-hour day. (*Id.* at 73) Dr. Bobba believed Plaintiff had limitations with both arms, and could do "[n]o work above shoulder level." (*Id.*) Further, she determined Plaintiff was limited to performing postural activities on an occasional basis. (*Id.* at 73-74)

On April 23, 2014, a couple of weeks after Plaintiff's cervical surgery, she had a rheumatology consultation with Dr. Kenneth Hsu. (Doc. 12-16 at 55) Dr. Hsu observed that Plaintiff had swelling in both hands and deformities "in the DIP joints of both 5th finger[s] with mild contracture." (*Id.*) He also noted Plaintiff exhibited pain with "range of motion in both shoulders up to $150^{o}$ with painful internal and external rotation." (*Id.*) Dr. Hsu diagnosed Plaintiff with "[u]nspecified inflammatory polyarthropathy," and ordered arthritis lab work. (*Id.* at 55-56) At a follow-up appointment two weeks later, Dr. Hsu noted Plaintiff's "labs were negative," but an x-ray showed "periarticular osteoporosis." (*Id.* at 53) Dr. Hsu administered a steroid trigger point injection in Plaintiff's left trapezius. (*Id.*)

In May 2014, Plaintiff told Dr. Hsu that she "felt better" following the injection and her pain was "2/10," with less than fifteen minutes of morning stiffness. (Doc. 12-16 at 51) Dr. Hsu found Plaintiff did not exhibit any neurological deficits. (*Id.*) However, Dr. Hsu noted Plaintiff had "mild [swelling] at PIP and MCP joints of both hands." (*Id.*) She continued to have "mild contracture" in the fifth fingers. (*Id.*) Dr. Hsu diagnosed Plaintiff with unspecified inflammatory polyarthropathy, unspecified diffuse connective tissue disease, and rheumatoid arthritis. (*Id.*)

Plaintiff began physical therapy for treatment following her surgery in July 2014. (Doc. 12-15 at 16) At the initial evaluation, Plaintiff reported her pain level was "5/10," and she had "tingling in both hands and feet." (*Id.*) In addition, she told the physical therapist that she was "independent in most [activities of daily living]," though she had "difficulty [with] quick movements of the neck and lifting anything heavy." (*Id.*) Treatment notes from Arvin Medical Clinic dated the same month indicated Plaintiff's rheumatoid arthritis was stable. (Doc. 12-17 at 19)

On August 7, 2014, Plaintiff again told Dr. Hsu that her pain level was "2/10" with the medication he prescribed. (Doc. 12-16 at 49) Dr. Hsu noted Plaintiff's "repeated labs were negative." (*Id.*) Plaintiff continued to have mild swelling at the joints in her hands. (*Id.*) The following week, Dr. Abumeri conducted a follow-up regarding Plaintiff's surgery, and Plaintiff reported she was "doing relatively well." (Doc. 12-15 at 20) Dr. Abumeri determined Plaintiff's motor strength in her arms was "5/5" and there was "no evidence of sensory deficit." (*Id.*)

In November 2014, Plaintiff returned to Dr. Hsu for prescription refills. (Doc. 12-16 at 50) Plaintiff reported she had 30 minutes of morning stiffness, and her pain was "4-5/10." (*Id.*) Dr. Hsu noted Plaintiff continued to have mild swelling in both hands, and "mild contracture" in her fifth fingers. (*Id.*)

On January 9, 2015, Plaintiff had nerve conduction studies and an electromyography. (Doc. 12-18 at 2-3) Dr. Katayoun Sabetian determined Plaintiff had mild "carpal tunnel syndrome affecting the median motor and sensory latencies" in the left hand, and showed signs of "early onset" carpal tunnel in the right. (*Id.* at 3) Further, she determined Plaintiff's electromyography results were "[n]ormal with no denervation nor myopathy in [the] muscles tested." (*Id.*)

///

**B.     Administrative Hearing Testimony**

Dr. Donald Goldman testified as a medical expert at the hearing on March 11, 2015. (Doc. 12-14 at 15) Dr. Goldman reported he reviewed Exhibits 1 through 27F, though he was unable to open the most recent exhibit, which was received the day of the hearing. (*Id.*) He noted Plaintiff had been diagnosed with seronegative rheumatoid arthritis and reported issues with her hands. (*Id.* at 18-19, 28)

Dr. Goldman reviewed electromyography studies and found they did not "identify a cervical radiculopathy," and "there was nothing seen" from Plaintiff's neck down to her shoulders. (Doc. 12-14 at 30) Dr. Goldman opined that "based upon [the] record," Plaintiff did not have a disabling orthopedic condition that lasted more than 12 months and was severe enough to cause functional limitations. (*Id.* at 31)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did "not engage[] in substantial gainful activity since July 20, 2011, the amended alleged onset date." (Doc. 12-3 at 19) Second, the ALJ found Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease; post-operative spinal fusion, without evidence of complications or residuals; headaches; rheumatologic disorder; and obesity. (*Id.*) At step three, the ALJ found these impairments did not meet or medically equal a listed impairment. (*Id.* at 20) Next, the ALJ determined:

> [T]he claimant has the following residual functional capacity, which is consistent with light work under CFR 404.1567(b) and 416.967(b): the claimant can lift and carry/push and pull 20 lbs. occasionally and 10 lbs. frequently; the claimant can stand and/or walk 6 hours and can sit 6 hours in an 8-hour workday (with normal breaks). The claimant can occasionally climb, crouch, and crawl. The claimant must avoid climbing ladder[s]/ropes/scaffolds. The claimant can frequently stoop, balance, and kneel. The claimant must avoid working or reaching above shoulder level, but has unrestricted ability to reach bilaterally at shoulder levels and below. The claimant has limited English capacity to read, speak, and write English. The claimant has a 6th grade education.

(*Id.* at 20-21) With this residual functional capacity, the ALJ found Plaintiff was "capable of performing past relevant work as an assembler/printed boards (DOT 729.687-038/light/SVP2)." (*Id.* at 26) In addition, the ALJ determined Plaintiff was able to perform "other jobs existing in the national economy." (*Id.*) The ALJ concluded Plaintiff was "not under a disability, as defined in the Social Security Act, from July 20, 2011, through the date of [the] decision." (*Id.* at 27)

# **DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred in evaluating her residual functional capacity and that the residual functional capacity is not supported by substantial evidence because the physicians who offered opinions regarding her limitations addressed her orthopedic impairments only. (Doc. 19 at 7-12)

## **A.      Residual Functional Capacity Determination**

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

A review of the ALJ's decision indicates that to reach the RFC, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence… [and] opinion evidence." (Doc. 12-3 at 21) Specifically, the ALJ determined:

> The limitation to light work with appropriate postural and environmental limitations is consistent with the clinical findings of bilateral tender SI joints; neck pain; and bilateral trapezius pain (Exhibit B8F/17, B7F/03); the diagnostic findings of degenerative disk disease of the cervical and lumbar spine; the claimant's receipt of regular follow-up; the evidence that the claimant underwent neck surgery; and the evidence that the claimant is obese.
>
> Further limitation is not consistent with the clinical findings of, among other things, normal motor strength in the upper and lower extremities, normal neurologic findings, normal range of motion of the upper extremities, normal muscle tone; the claimant's receipt of and improvement with routine and conservative treatment; the normal EMG/nerve conduction studies of the claimant's upper extremities; a note from her provider that her arthritis is stable; and the wide activities of daily living, including exercise and doing household work.

(Doc. 12-3 at 24-25) The ALJ also opined further limitations would not be "consistent with the lack of objective corroborative clinical and diagnostic findings." (*Id.* at 25) For example, the ALJ noted that

8

although Plaintiff "testified that her right hand is very weak and has no strength, … [the] EMG/ nerve conduction studies revealed normal results," and the treatment notes indicated that Plaintiff was diagnosed with "mild *left* carpal tunnel syndrome." (*Id.*, emphasis in original)

**B.      Plaintiff's Failure to Identify Additional Limitations**

Significantly, Plaintiff fails to identify the limitations related to rheumatoid arthritis that she believes should have been incorporated into the RFC by the ALJ. Previously, the Ninth Circuit "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" where "the RFC include[d] several physical limitations." *See Valentine v. Astrue,* 574 F.3d 685, 692 n.2 (9th Cir. 2009). In *Valentine*, the claimant asserted the ALJ failed to account for his knee and shoulder injuries in the RFC, yet failed to identify "what other physical limitations follow[ed] from the evidence of his knee and should injuries, besides the limitations already listed in the RFC." *Id.* Likewise, here, the RFC included physical limitations—including restrictions with lifting, carrying, and reaching—and Plaintiff fails to identify additional limitations she believes should have been incorporated from the medical record.

District courts throughout the Ninth Circuit determined failure to identify specific limitations that should have been incorporated into an RFC is fatal to a claimant's challenge of the ALJ's RFC determination. *See, e.g.*, *Juarez v. Colvin*, 2014 U.S. Dist. LEXIS 37745 at *15 (C.D. Cal. Mar. 20, 2014) (rejecting an argument that the ALJ erred in evaluating the claimant's limitations where she had "not specified or proffered evidence of any additional limitations from the arthritis that the ALJ failed to consider"); *Hansen v. Berryhill,* 2018 U.S. Dist. LEXIS 19489 (W.D. Wash. Feb. 6, 2018) ("Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error in the RFC assessment with the requisite specificity"); *Thomas v. Comm'r of SSA*, 2015 U.S. Dist. LEXIS 99338 at *21 (Dist. Or. Jul 30, 2015) ("Plaintiff does not cite to evidence of physical limitations stemming from these impairments beyond those already listed in his RFC. Without more specific information on how these conditions hinder Plaintiff, the Court declines to find the ALJ failed to account for Plaintiff's limitations").

Accordingly, the Court is unable to speculate as to the limitations Plaintiff believes the ALJ

should have incorporated into the RFC. *See Valentine,* 574 F.3d at 692 n.2; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting the Court "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant'")

### C.     Substantial Evidence Supports the RFC

Previously, this Court explained: "The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial evidence and free of legal error." *Gallardo v. Astrue*, 2008 U.S. Dist. LEXIS 84059 at *30 (E.D. Cal. Sept. 10, 2008); *see also German v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 25691 at *11-12 (E.D. Cal. Mar. 14, 2011) (explaining "[i]t is not for this court to reevaluate the evidence"). The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[3]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

The decision of the ALJ is supported by the findings of several physicians —including Dr. De la Rosa, Dr. Frye, and Dr. Bobba—who opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. (*See* Doc. 12-5 at 43-44, 72-76; Doc. 12-10 at 73)  The physicians each opined Plaintiff could perform the requirements of light work with postural restrictions, as well as a restriction from reaching overhead. (Doc. 12-5 at 44, 72-76; Doc. 12-10 at 74)  These limitations were incorporated by the ALJ in the RFC. (*Compare* Doc. 12-5 at 43-44, 73-76; Doc. 12-10 at 73-74 *with* Doc. 12-3 at 21-22)  Given the consistency of the medical opinions, the opinions of Drs. De la Rosa, Frye, and Bobba are substantial evidence in support of the RFC. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining opinions of non-examining physicians may be substantial evidence that supports an ALJ's decision); *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995)

---

[3] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

(opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Further, the ALJ addressed Plaintiff's level of activity to support the RFC finding. As the ALJ observed, in functional reports and at the administrative hearings, Plaintiff reported "a very wide range of activities of daily living, not fully consistent with total disability," such as household chores, driving, walking, shopping, volunteering, and attending church three times each week. (Doc. 12-3 at 21-22) Although Plaintiff asserts "[h]er reported activities do not corroborate the ALJ's RFC" (Doc. 19 at 12), this Court previously determined a similar level of activity "bolster[ed] the ALJ's conclusion that Plaintiff retained the RFC to perform at least light work in the state and national economy." *See Werner v. Astrue*, 2010 U.S. Dist. LEXIS 60440 at *29-30 (E.D. Cal. May 27, 2010) (finding the claimant's level of activity supported the light RFC where his activities included preparing meals, household chores, driving his son to school, attending church regularly, shopping for groceries once a week, and visiting friends and neighbors). Accordingly, the ALJ did not err in considering Plaintiff's level of activity as supporting evidence for the RFC.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ applied the proper legal standards and the RFC is supported by substantial evidence in the record. Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Rosa Fernandez.

IT IS SO ORDERED.

Dated: __March 29, 2018__        ____/s/ Jennifer L. Thurston____
                                                           UNITED STATES MAGISTRATE JUDGE